### CHASE *v.* AINSWORTH.

1. CONTRACTS—SALE—CONSTRUCTION OF TERMS.
   The expression, "he [the seller] to have advance for two weeks," in a contract for the sale of beans, cannot, without the aid of extrinsic evidence, be construed to refer to the market price at the end of two weeks.

2. SAME—AMBIGUITY—EXTRINSIC EVIDENCE.
   Defendants, who contended that the phrase, "he to have advance for two weeks," in a contract for the sale of beans, meant the market price at the end of two weeks, and who made no objection, on the ground of a patent ambiguity, to the introduction of evidence to explain it, cannot complain

because the court permitted the jury to construe the phrase after hearing extrinsic evidence.

3. SAME—OPINIONS.

A party to a written contract cannot testify to the meaning of an expression therein, in the absence of a showing that it has a definite trade meaning.

4. TRIAL—INSTRUCTIONS—STATEMENTS OF CLAIMS OF PARTIES.

It was not error for the court to state plaintiff's claim without also stating defendants' claim in the same connection, where it was properly given in a subsequent portion of the charge.

5. SAME—EVIDENCE—PURPOSE—ERROR.

In an action for the price of beans sold at the market price at a certain time, it was not error to exclude testimony as to the difference between the price of new beans and old beans, where defendant did not state the purpose of the testimony, which was to show that the price relied upon by plaintiff was the price of new beans, while his beans were old.

Error to Shiawassee; Smith, J. Submitted October 9, 1903. (Docket No. 42.) Decided December 1, 1903.

*Assumpsit* by Almon L. Chase against Hiram N. Ainsworth and William Hanmer, copartners as Ainsworth & Hanmer, for goods sold and delivered. From a judgment for plaintiff, defendants bring error. Affirmed.

*Selden S. Miner*, for appellants.

*John T. McCurdy*, for appellee.

CARPENTER, J. October 1, 1902, the parties to this suit made an agreement by which the plaintiff sold to the defendants a quantity of beans. At the conclusion of their negotiations the following memorandum was made by defendants and delivered to plaintiff:

"Owosso, MICH., Oct. 1st, 1902.
"Bought A. L. Chase about 400 bu. beans @ 1.80 bu. Shrink them what they pick, and he to have advance for two weeks; to be delivered at any time in two weeks, if the roads are good; if not good, have longer time.
"AINSWORTH & HANMER.
"Advance $25."

Part of the beans sold were delivered October 9, part October 14, and the remainder October 22, 1902. This suit is brought to recover the balance unpaid for said beans. The sole dispute relates to the price per bushel. Plaintiff claims that he is entitled to receive the highest market price during the two weeks between October 1st and October 14th, which was $2.10 per bushel. Defendants claim that he is entitled to receive the market price at the end of two weeks, October 14th, or $2 per bushel. Under plaintiff's claim the balance due him was $166.45; under defendants' claim that balance was $130.95. On the trial, without objection, each party testified freely to the conversation which occurred October 1st, before the memorandum in question was signed. Plaintiff testified that in this conversation defendants agreed to pay for the beans the highest market price during the next two weeks, while defendants' testimony indicated that in the conversation they used the exact words stated in the writing.

After the testimony was all in, defendants requested the court to instruct the jury as follows:

"The rise in the price of beans under the contract, Exhibit 1, if you find such contract was made, refers to the market price of beans on, to wit, the 14th day of October, 1902, and not to the price on a day before the 14th, or at a time when plaintiff did not notify defendants that he would accept the market price."

The court refused to give this request, and charged the jury that the memorandum in writing heretofore referred to "was not, in itself, a contract; it does not stand as a contract alone; it is only a part, or integral part, of the contract they claim to have made there;" and told the jury, in substance, that they were to determine from the conflicting testimony of the parties whether the price was to be the highest market price during said two weeks, or the market price on the 14th day of October. The jury found a verdict for the plaintiff for the full amount. We are asked now to reverse the judgment of the court below, on the ground that, the contract between the parties having

been in writing, the court erred in permitting the jury to determine its construction.

If the written contract could, on its face, be construed as contended by defendants, this point is well taken, and the judgment should be reversed. But, in our judgment, the contract cannot, without the aid of extrinsic testimony, be construed as contended by defendants. We cannot say that the expression, "he to have advance for two weeks," refers to the market price at the end of two weeks. This language is quite as appropriate to indicate the highest advance during the said two weeks, as it is the advance at the end of said two weeks. We are bound to say either that this expression is so ambiguous that it cannot be construed by the court without extrinsic testimony, or that, properly construed, it fixed the compensation at the highest market price during those two weeks. If it fixed the highest market price during those two weeks, plaintiff was, as a matter of law, entitled to the verdict he received, and therefore defendants can complain of no error. If, on the other hand, the language is so ambiguous that it cannot be construed without the aid of extrinsic evidence, defendants are in no position to complain of the verdict. They did not make the point in the court below that, as the ambiguity appeared on the face of the writing, it could not be explained by extrinsic evidence. Neither did they object to the character of the extrinsic evidence introduced. Without objection on their part, plaintiff testified to the conversation which occurred just before the writing was made, and defendants gave like testimony. Nor did defendants offer proper evidence of any other character. It is true, one of the defendants was asked, "You may state to the jury what is the meaning of the term, 'he to have advance for two weeks,' in your business." As there was no showing, or offer to show, that this expression had any definite trade meaning, this testimony was incompetent, and was properly excluded. See *Althouse* v. *McMillan*, 132 Mich. 145 (92 N. W. 941). The case was therefore tried, as well by the defendants as

by the plaintiff, upon the assumption that, if extrinsic evidence was competent to explain this phrase, evidence of the character introduced was competent.   It was the duty of the court, therefore, either to instruct the jury to render a verdict for the plaintiff, upon the assumption that the contract, properly construed, entitled him to the damages claimed, or to leave the question to the jury; and defendants cannot complain that he took the latter course.

In submitting the case to the jury, the court stated the plaintiff's claim and his testimony, and error is assigned because he did not state "defendants' claim in connection therewith."   There is no merit in this complaint, for subsequently in the charge the judge stated, "On the other hand, the defendant claims under his version of the contract; namely, that the last day of the two weeks was to control."

Other complaints are made of the charge.   It is sufficient, however, to say that, under the views announced in this opinion, none of them are well grounded.

Error is also assigned because defendants were not permitted to state the difference between the price of old beans and new beans on October 1st, 7th, 9th, and 14th. It is now claimed by defendants that the purpose of this testimony was to prove that plaintiff could not rely on the market price of $2.10 per bushel, as the beans sold at that price were new beans, and plaintiff's were old beans.   It is a sufficient answer to this contention to say that defendants never apprised the court of this purpose, and certainly that purpose could not have been inferred.   The court was justified, in the absence of any explanation, in assuming that this question raised an entirely immaterial issue.

The judgment of the court below will therefore be affirmed, with costs.

The other Justices concurred.